## AFFIDAVIT

I, Edward Phillips, Jr., being duly sworn, do herby depose and state the following:

## BACKGROUND

1. I am a Postal Inspector with the United States Postal Inspection Service (USPIS), and have been since 2003. I work at the USPIS Boston Division, and I am a member of the Mail Theft Team, which investigates cases of identity theft and mail theft. During the course of my time as a Postal Inspector, I have conducted or participated in numerous investigations into identity theft, mail theft, and other illegal activities, which involved, among other things, controlled deliveries, physical surveillance, electronic surveillance, and the execution of search warrants.

2. As set forth in this affidavit, probable cause exists to believe that KRISTEN ASACK, from on or about September 2, 2016 through September 4, 2016, within the District of Rhode Island, and elsewhere, conspired with people known and unknown to the United States to knowingly and with intent to defraud produce, use, or traffic in one or more counterfeit access devices, contrary to 18 U.S.C. § 1029(a)(1), in violation of 18 U.S.C. § 371 (Count One), and, during and in relation to said offense, did knowingly transfer, possess, or use, without lawful authority, a means of identification of another person, in violation of 18 U.S.C. § 1028A(a)(1) (Count Two). Specifically, there is probable cause to believe that ASACK and other people known and unknown to the United States used the identity of victim S.C. to unlawfully obtain credit cards in S.C.'s name from Nordstrom Department Store (issued by TD Bank), Pottery Barn (issued by Commenity Bank), Lord & Taylor (issued by Capital One), Macy's (issued by

American Express), and Lowe's (issued by Synchrony Bank), and used the credit cards to unlawfully obtain merchandise from those stores.

3. This affidavit is offered for the sole purpose of establishing probable cause for a criminal complaint charging ASACK with violations of 18 U.S.C. §§ 371 and 1028A(a)(1) and does not contain all the facts and circumstances of which I am aware related to this investigation.

Use of Victim S.C.'s Personally Identifiable Information

4. In May 2016, the Yarmouth Police opened an investigation into an organized group of individuals engaged in identity theft and credit card fraud. The co-conspirators utilized stolen personal identification information to obtain credit cards at retail stores in and around Rhode Island and Massachusetts, and used the credit cards to purchase merchandise.

5. On September 6, 2016, as part of an unrelated investigation at the Cape Point Hotel in Yarmouth, Massachusetts, law enforcement observed a photograph of what appeared to be a forged Texas driver's license. The license contained the personally identifiable information of victim S.C. but bore the image of a white female later identified as the Defendant, KRISTEN ASACK. Law enforcement obtained a comparison photograph of the true S.C., and confirmed that the individual on the license was not S.C.

6. Law enforcement then contacted S.C., who confirmed that she was a victim of identity theft and credit card fraud. Specifically, S.C. identified accounts opened up in her name without her permission at Pottery Barn and Nordstrom which subsequently had been accessed without her knowledge or consent. S.C. also identified

several other accounts that had been opened using her personal identification information without her knowledge or consent: one account opened at Macy's (in Burlington, Massachusetts), two accounts at Lord & Taylor's (in Burlington and Natick, Massachusetts), and one account at Lowe's (in Wareham, Massachusetts).

## The September 9, 2016 Stop & Search

7.      On September 9, 2016, the police stopped a vehicle operated by co-conspirator C.F. and arrested him in connection with this investigation. At the completion of the booking process, C.F. was allowed to make a phone call to arrange for bail. C.F. contacted ASACK to bring bail money to him. Law enforcement officials then observed ASACK entering and operating a black Mercedes SUV, the same vehicle C.F. had previously been seen driving in the course of law enforcement's investigation. Officer Van Ness of the Yarmouth Police Department conducted a motor vehicle stop of the black Mercedes SUV, and during the stop, ASACK admitted that she did not have authorization to operate the vehicle. As a result, the vehicle was impounded and subjected to the typical inventory process followed by Yarmouth Police.

8.      During the inventory process, Officer Van Ness observed new merchandise from Pottery Barn and Lowe's Home Improvement in the back of the vehicle. Because Officer Van Ness was aware that fraudulent purchases were suspected of having been made at Pottery Barn by ASACK using S.C.'s personally identifiable information, he halted the inventory procedure and sought a state search warrant for the vehicle.

9.      During the subsequent search of the Mercedes, done pursuant to a state search warrant, law enforcement officers located what appeared to be another Texas

driver's license containing the identifying information of S.C. and bearing the photograph of a white female that was hidden in a concealed space near the vehicle's roof. This license matched the photocopied license observed at the Cape Point Hotel on September 6, 2016. An Amazon.com Chase MasterCard issued in the name of S.C. was also located in the vehicle. A records check with the Texas Registry of Motor Vehicles revealed that this license had not been issued in S.C.'s name. Based on my training and experience, I know that the lack of an official record in a state's Registry of Motor Vehicles for what purports to be a state-issued motor vehicle license often signifies that the purported motor vehicle license is fraudulent. I later spoke with Chase Bank card services and learned that the Chase MasterCard found in the automobile operated by ASACK was not a valid credit card. Chase Bank had no record of issuing a card with the account number located on the credit card found in ASACK's automobile. Additional forged licenses and embossed credit cards containing the personally identifiable information of additional victims R.M. and N.K., but bearing the image of ASACK, were located in the same space as the forged S.C. license.

   10. In the glove compartment of the Mercedes SUV driven by ASACK, law enforcement officers located an envelope containing numerous receipts and gift cards. Among the receipts were a purchase receipt from Pottery Barn in Cranston, RI as well as a purchase receipt from Nordstrom in Providence, RI. The receipts indicated that these purchases were made at Pottery Barn and Nordstrom on September 4, 2016. Additional investigation identified S.C. as the purported account holder at both Pottery Barn and Nordstrom. Surveillance images provided by Nordstrom captured ASACK using the

personal identifying information of S.C. on September 4, 2016 to make an in-store purchase.

11.   In the rear of the Mercedes SUV, several pillows, bed sheets, towels, and other household items were discovered. The UPC codes on these items matched the UPC codes on the September 4, 2016 Pottery Barn receipt located in the glovebox of the Mercedes.

### Further Investigation & Interview of ASACK

12.   On September 14, 2016, Detective Schneeweis of the Yarmouth Police Department spoke with Robin Clemens, a loss prevention agent with Nordstrom Department Store in Providence, RI. Clemens was able to confirm and locate the purchase made on the receipt using the newly opened credit card issued in S.C.'s name. Clemens provided Detective Schneeweis with surveillance photos of the individual using the account. In the photos, a white female, identified as ASACK, is observed posing as S.C. to make payment for the merchandise.

13.   ASACK was interviewed by investigators on September 29, 2017. During the recorded interview, ASACK admitted to using the personally identifiable information of S.C. to open credit accounts at Nordstrom, Pottery Barn, Macy's, Lord & Taylor, and Lowe's. ASACK stated she was recruited to participate in the scheme by C.F., who obtained the fraudulent identifications from a third party using a photograph ASACK provided to him of herself. She admitted to using the newly obtained store credit to fraudulently purchase merchandise from the stores over Labor Day Weekend September 2-4, 2016, and she explained that she and C.F. had gone on the shopping trip together

throughout Rhode Island and Massachusetts. ASACK further identified the items recovered by investigators from the Mercedes SUV as the merchandise she in fact purchased over the Labor Day Weekend shopping trip with C.F.

14. In total, ASACK purchased approximately $9,362.76 of merchandise from various stores using S.C.'s personally identifiable information.

## Conclusion

15. Based on the facts set forth herein, there is probable cause to believe that from on or about September 2, 2016 to on or about September 4, 2016, in the District of Rhode Island, and elsewhere, KRISTEN ASACK did conspire with people known and unknown to the United States to knowingly and with intent to defraud produce, use, or traffic in one or more counterfeit access devices, contrary to 18 U.S.C. § 1029(a)(1), in violation of 18 U.S.C. § 371 (Count One), and, during and in relation to said offense, did knowingly transfer, possess, or use, without lawful authority, a means of identification of another person, to wit the name of S.C., in violation of 18 U.S.C. § 1028A(a)(1) (Count Two).

EDWARD PHILLIPS, JR.
U.S. POSTAL INSPECTOR
U.S. POSTAL INSPECTION SERVICE

Sworn to before me this 10th day of March 2020, in Providence, Rhode Island.

PATRICIA A. SULLIVAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND